IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAN K. VODA, M.D.,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-09-95-L
                                  )
MEDTRONIC INC. and                )
MEDTRONIC VASCULAR, INC.,         )
                                  )
            Defendants.           )

# O R D E R

Plaintiff, Dr. Jan K. Voda, is the holder of United States Patent No. 6,083,213 ("the '213 patent"), which was issued by the United States Patent and Trademark Office on July 4, 2000. Exhibit 1 to Complaint (Doc. No. 1-2). The '213 patent generally relates to plaintiff's inventive technique for using a guiding catheter to perform angioplasty of the left coronary artery. On January 22, 2009, plaintiff filed this action seeking damages for alleged infringement of the '213 patent by defendants Medtronic Inc. and Metronic Vascular, Inc. based on their manufacture and sale of Medtronic EBU Guiding Catheters. Complaint at ¶¶ 15, 17-21.

This matter is before the court on defendants' motion to dismiss for lack of standing. Defendants contend plaintiff sold his rights to sue for infringement to a licensee and therefore "is only permitted to sue for infringement of the '213 Patent if he receives permission to sue from the licensee." Defendants' Motion to Dismiss Complaint and Brief in Support at 1. Standing is a jurisdictional issue on which

plaintiff bears the burden of proof.  Sicom Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005).  As defendants controvert plaintiff's jurisdictional allegations, they are

> deemed to be challenging the factual basis for the court's subject matter jurisdiction.  In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion.  All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court.  In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.

Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993) (citations and footnote omitted), *cert. denied*, 512 U.S. 1235 (1994).

On May 18, 2009, the court held a hearing at which the parties presented evidence and argument.  The record evidence establishes that plaintiff filed United States Patent Application No. 07/622,873 ("the '873 Application") on January 23, 1991.  The '873 Application gave rise to a chain of continuation-in-part applications that eventually led to issuance of the '213 patent.  On November 12, 1991, plaintiff entered into an Exclusive License Agreement ("Agreement") with SCIMED Life Systems, Inc. ("SCIMED").  The Agreement granted SCIMED, for the life of any patents to be issued, exclusive worldwide rights to "manufacture, use, sell, exploit

and otherwise commercialize" the technology generated from the '873 Application.[1]
The Agreement also granted SCIMED a right of first refusal to sue for patent infringement.

> 5.2   Infringement of the '873 Catheter Technology or VODA Trademark.  If either party determines that a third party is making, using or selling a product that may infringe any proprietary rights to the '873 Catheter Technology or the VODA trademark, that party will notify the other party in writing.  SCIMED may, at its sole option, bring suit against such alleged infringer.  All recoveries in such suit shall inure to the benefit of SCIMED, less a one time 4% royalty payment to Dr. Voda; such royalty shall be based on recoveries net of all legal expenses.  *If SCIMED elects not to bring a suit against the alleged infringer, it shall promptly notify Dr. Voda and Dr. Voda shall then have the right to commence such action at his own cost and expense, in which case any recoveries shall inure to his benefit.*

Exhibit 2 to Defendants' Motion to Dismiss Complaint and Brief in Support at 6 (emphasis added).  Thus, under the Agreement, plaintiff has the right to sue for patent infringement if he notifies SCIMED in writing of the infringement, SCIMED

---

[1]Section 3.1 of the Agreement provides:

> 3.1   Exclusive License.
>
> a. Dr. Voda hereby grants to SCIMED the exclusive right and license throughout the Exclusive License Term, to manufacture, use, sell, exploit and otherwise commercialize anywhere in and throughout the world the '873 Catheter Technology, including all patents issued now or in the future on the '873 Catheter Technology, Licensed Product(s) and the trademark VODA for use with Licensed Product(s), including the right to assign such license or grant sublicenses (the "Exclusive License").

Exhibit 2 to Defendants' Motion to Dismiss Complaint and Brief in Support at 3.  Pursuant to § 1.4, the Exclusive License Term extends to "the life of the last of any patent(s) that issue".  Id. at 2.

"elects not to bring a suit against the alleged infringer", and SCIMED "promptly notif[ies] Dr. Voda" of that election. The issue for decision is thus whether SCIMED released its right to sue the current defendants.

On February 21, 2001, plaintiff, through counsel, notified SCIMED of his belief that Cordis Corporation and Guidant Corporation were infringing on his patents. Exhibit 5 to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition"). The letter requested that SCIMED advise plaintiff whether it "will pursue *these matters* or relinquish its option so that Dr. Voda may pursue *these matters* on his own." Id. (emphasis added). SCIMED responded on March 21, 2001 by requesting additional information. Exhibit 6 to Plaintiff's Opposition at 1. SCIMED also, however, noted its obligation to inform plaintiff if it elected not to bring suit so that "Dr. Voda may commence an action solely at his own cost and expense." Id. It concluded this letter by stating that "[u]pon receipt of the above information or any other information that we may require, we will review this matter and provide you with our position regarding our option to pursue an infringement action *against the above companies or any other entity*." Id. at 1-2 (emphasis added). On May 14, 2001, plaintiff's counsel again notified SCIMED of possible infringement. Exhibit 8 to Plaintiff's Opposition. In the May 14, 2001 letter, plaintiff's counsel notified SCIMED that:

> Dr. Voda has recently returned from a trip to Pueblo, Mexico, where he learned that the following three catheters are being marketed: Cordis "XB" catheter,

4

> Guidant "Viking" catheter, and Medtronic "EBU" catheter. Dr. Voda believes that each of these catheters infringes one or more claims of his patents that are licensed to your company, and that these catheters are being made, used or sold in the United States. Please consider these along with the other information you should have by now obtained from Mr. Fleming or others at Scimed pursuant to our letter of April 9, 2001.[2]

Exhibit 8 to Plaintiff's Opposition. The letter continued:

> It has already been almost three months since our letter of February 21, 2001; therefore, we will expect to hear from Scimed by July 21, 2001 as to whether it exercises its option by bringing suit against *infringers* of the licensed patents. If we do not receive a response by then to the contrary, we will take that as Scimed's choice not to exercise its option, whereby in accordance with the referenced agreement Dr. Voda may from that date pursue the matter as he chooses.

Id. (emphasis added). Thereafter, SCIMED offered to "contact [Dr. Voda] by September 21, 2001 as to its findings encompassed by the patent review, and should have more insight into our position regarding our option to pursue an infringement action under the above referenced Agreement." Exhibit 9 to Plaintiff's Opposition. Plaintiff's counsel confirmed the extension of time in a letter issued the next day, noting:

> This confirms yesterday's telephone conversation during which you advised that Scimed is investigating and evaluating, both internally and with outside counsel, the infringement *issues* referred to in our correspondence over

---

[2]The April 9, 2001 letter informed SCIMED that plaintiff had already provided information and possibly infringing catheters to one of SCIMED's employees, Tom Fleming. Exhibit 7 to Plaintiff's Opposition.

5

> the past several months. As we discussed, we will look for Scimed's completed response by the end of this September.

Exhibit 10 to Plaintiff's Opposition (emphasis added).

On September 21, 2001, counsel for SCIMED and plaintiff again spoke. SCIMED indicated it still was not in a position to inform plaintiff whether it was going to exercise its option to sue for patent infringement. Exhibit 11 to Plaintiff's Opposition. It notified plaintiff that it would contact him within two months to inform him of its decision. Id. Plaintiff, through counsel, informed SCIMED that this was "Scimed's final opportunity to make the election to bring suit" and that "if Scimed has not exercised its option to bring suit within the two months to which you refer, we intend to take that as Scimed's decision not to elect, whereby Dr. Voda will be entitled to pursue *matters* of infringement." Exhibit 12 to Plaintiff's Opposition (emphasis added). On November 20, 2001, SCIMED notified plaintiff's counsel that "[u]pon review of the potential infringement activity and the patents, Scimed has elected to not bring suit at this time . . . and Dr. Voda may pursue a potential infringement action on his own. Please keep us apprised of any action taken by Dr. Voda." Exhibit 13 to Plaintiff's Opposition. In his Declaration, plaintiff states he understood this letter "released Scimed's option to bring suit and that I had the right to sue, including the right to sue Cordis, Guidant and Medtronic." Exhibit 1 to Plaintiff's Opposition. SCIMED's in-house patent counsel, Steven McAuley, however claims that "[t]hrough that correspondence, [SCIMED] was only giving Dr. Voda

6

permission at the time to bring one lawsuit against Cordis Corporation." Exhibit 20 to Defendants' Reply Brief in Support of Motion to Dismiss Complaint at ¶ 4.  Mr. McAuley reiterated this position when he testified at the hearing via video deposition. He reasoned – and defendants argue – that the November 20, 2001 letter's reference to "a potential infringement action" was singular and therefore only released SCIMED's option with respect to one infringer, Cordis.

The court finds no support for defendants' position in the correspondence between plaintiff and SCIMED.  Pursuant to the Agreement, plaintiff notified SCIMED of potential infringement by three companies.  At no time did SCIMED inform plaintiff that it was only considering alleged infringement by Cordis.  If SCIMED intended to limit its release of the right to sue solely to an action against Cordis, it was incumbent upon it to clearly state that in the November 20, 2001 letter.[3]  That it did not do so is fatal to defendants' argument.  Moreover, the course of dealing between plaintiff and SCIMED supports the court's finding that the November 20, 2001 letter released SCIMED's option to sue entities other than Cordis.  Plaintiff notified SCIMED *after* filing suit against Cordis, Guidant, and Merit Medical Systems, Inc.,[4]

---

[3]SCIMED's responsibility in this regard was particularly compelling in light of its March 21, 2001 representation that it would provide plaintiff with its "position regarding our option to pursue an infringement action *against the above companies or any other entity*."  Exhibit 6 to Plaintiff's Opposition at 1-2 (emphasis added).

[4]The case against Cordis was filed on October 30, 2003; counsel for plaintiff notified SCIMED of this filing in November 2003.  Exhibit 26 to Plaintiff's Supplemental Brief in Support of its Opposition to Defendants' Motion to Dismiss at ¶ 4 ("Plaintiff's Supplemental Brief").  The case against Guidant was filed on March 24, 2006 and plaintiff notified SCIMED by letter in April 2006. Exhibit 25 to Plaintiff's Supplemental Brief at ¶¶ 6-7.  Plaintiff filed an action against Merit on


and SCIMED did not object to the filing of any of these lawsuits on the ground that it had not released its right to sue.  The September 22, 2008 meeting between plaintiff and SCIMED's attorneys does not alter the court's conclusion that SCIMED released its right to sue the Medtronic defendants in 2001.

In sum, the court finds that, pursuant to the terms of the Agreement, plaintiff has standing to bring this action.  Defendants' Motion to Dismiss Complaint (Doc. No. 26) is therefore DENIED.  Defendants shall file their answers to the complaint within ten (10) days of the date of this order.

It is so ordered this 21st day of May, 2009.

*Tim Leonard*

TIM LEONARD
United States District Judge

---

February 14, 2007; SCIMED was notified in March 2007.  Exhibit 26 to Plaintiff's Supplemental Brief at ¶ 23.