IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN K. VODA, M.D.,            )<br>                                              )<br>             Plaintiff,              )<br>                                              )<br>vs.                                       )<br>                                              )<br>MEDTRONIC INC. and         )<br>MEDTRONIC VASCULAR, INC., )<br>                                              )<br>             Defendants.         ) | Case No. CIV-09-95-L |

# **O R D E R**

Plaintiff, Dr. Jan K. Voda, is the holder of United States Patent No. 6,083,213 ("the '213 patent"), which was issued by the United States Patent and Trademark Office on July 4, 2000. Exhibit 1 to Complaint (Doc. No. 1-2). The '213 patent contains method claims; that is, it relates to plaintiff's inventive technique for using a guiding catheter to perform angioplasty of the left coronary artery. Method claims are in contrast to apparatus claims, which describe the structure of a piece of equipment such as a catheter.[1] Patent No. 5,445,625 ("the '625 patent"), which was also issued to plaintiff, is an apparatus claim; it describes his invention of an angioplasty guide catheter and reflects the catheter "in a relaxed state prior to insertion in the cardiovascular system." Voda v. Cordis Corp., 536 F.3d 1311, 1316 (Fed. Cir. 2008). The '213 patent, in contrast, focuses on the catheter's use in the

---

[1] *See* Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("apparatus claims cover what a device *is*, not what a device *does*") (emphasis in original).

human body. See id. at 1319. On January 22, 2009, plaintiff filed this action seeking damages for alleged infringement of the '213 patent by defendants Medtronic Inc. and Medtronic Vascular, Inc. based on their manufacture and sale of Medtronic EBU Guiding Catheters. Complaint at ¶¶ 15, 17-21. Plaintiff contends that defendants promote the use of their catheters "in a manner that contributes to or induces the infringement of the method covered by the '213 patent claims." Id. at ¶ 18.

Although the '213 patent contains five claims, the parties agree that for purposes of the *Markman*[2] hearing, only Claims 1 and 2 are at issue. These claims teach:

> 1. A method for advancing a catheter through the aorta and into a coronary ostium, the aorta having an arch and an inner wall opposite the ostium, comprising the steps of:
>
> providing a catheter including an elongate catheter body having a proximal end and a distal end and having a central lumen from the proximal end to the distal end adapted to slidably receive a therapeutic catheter, the catheter body including a tip at the distal end of the catheter body adapted to removably lodge in the coronary artery ostium;
>
> advancing the catheter body distal end through the aortic arch; and
>
> engaging the aorta inner wall with a portion of the catheter body such that when the distal end of the catheter is positioned in the ostium, the catheter body engages the

---

[2]Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).

> opposite wall of the aorta along a line having a length of about 1.5 cm or greater.
>
> 2. A method in accordance with claim **1**, wherein the ostium is the left coronary ostium.

Exhibit 1 to Medtronic's Opening Claim Construction Brief at 31-32 (Doc. No. 126-1).

In a previous case brought by plaintiff against Cordis Corporation, the parties agreed to the construction of various claim terms,[3] and the court construed the meaning of the phrase "along a line" as used in Claims 1 and 4 of the '213 patent. *See* Voda v. Cordis Corp., 506 F. Supp. 2d 868, 876 (W.D. Okla. 2007), *aff'd in part, rev'd in part*, 536 F.3d 1311 (Fed. Cir. 2008) [hereinafter "the *Cordis* case"]. The court construed "along a line" as

> [c]ontacting the aorta inner wall with a portion of the tube body such that when the end of the catheter lodges within the opening in the coronary artery, an about 1.5 cm or greater length of the tube body bears upon the wall of the aorta opposite the opening.

Cordis Corp., 506 F. Supp. 2d at 876. The Federal Circuit affirmed this construction,[4] and the parties in this case do not dispute the constructions used in the *Cordis* case.

In this action, the parties have agreed to construction of the following claim terms:

---

[3] The parties agreed to the construction of the following terms: aorta; catheter; distal; lumen; ostium; and proximal.

[4] Cordis Corp., 536 F.3d at 1319.

3

| Term | Construction |
|---|---|
| along a line | contacting the aorta inner wall with a portion of the tube body such that when the end of the catheter lodges within the opening in the coronary artery, an about 1.5 cm or greater length of the tube body bears upon the wall of the aorta opposite the opening |
| aorta | the main trunk of a series of blood vessels which convey oxygenated blood to the tissues of the body and is comprised of the ascending aorta, the arch of the aorta, and the descending aorta |
| aortic arch | entire aortic arch |
| catheter | a flexible, tubular medical device for insertion into canals, blood vessels, passageways or body cavities |
| distal | closer to the target site in the patient's body; farther from the nurses or doctor using the catheter |
| distal end | the portion of the catheter farthest away from the operator |
| lumen | the channel or bore running the length of the catheter |
| ostium | the opening into a blood vessel |
| proximal | closer to the nurse or doctor using the catheter; farther from the target site in the patient's body |
| tip | end of the catheter |

Medtronic's Opening Claim Construction Brief at 1-2.

The parties, however, cannot agree on the term "providing a catheter" contained in Claim 1. This term was not at issue in the *Cordis* case and therefore

was not construed during that litigation. Defendants' proposed construction of "providing a catheter" is "creating, constructing or selling a catheter with specific characteristics." Medtronic's Opening Claim Construction Brief at 1 (Doc. No. 126). Plaintiff contends that no claim construction of the phrase "providing a catheter" is needed as the phrase should be construed in accordance with its ordinary meaning. Dr. Voda's Responsive Claim Construction Brief at 4 (Doc. No. 138). If, however, the court determines that construction is necessary, plaintiff's proposed construction is "[m]aking available or furnishing for use". Id. On December 6, 2011, the court held a hearing on claim construction. Based on the parties' briefs and the arguments presented at that hearing, the court makes the following rulings.

Patent claims define in words the scope of the invention at issue. Construction of the claims is a matter of law for the court. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (*en banc*).

> In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to "particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention." 35 U.S.C. § 112, ¶ 2.

Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). Likewise, the court must be guided by the principle that there is a "heavy presumption" that words used in the claims are "'given their ordinary and customary meaning,'" that is "the meaning that the term would have to a person of ordinary skill

in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170 (2006) (citation omitted).  *See also* Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002) (collecting cases), *cert. denied*, 538 U.S. 1058 (2003). Once the court has determined the ordinary meaning of the disputed terms, the court must examine the written description and prosecution history of the patent to ascertain whether the inventor specifically defined or used any of the terms in a way that is inconsistent with the ordinary or customary meaning.  Likewise, if the court cannot fathom the meaning of the words, the specifications and prosecution history must be examined to determine the scope of the claims.  The Federal Circuit has cautioned, however, that "[t]he written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims." Markman, 52 F.3d at 980.

With these principles in mind, the court construes "providing a catheter" to mean "making available or furnishing for use a catheter".  This construction is consistent with the ordinary and customary meaning of the term "providing".  *See* Phillips, 415 F.3d at 1312 ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'")  The parties agree there is nothing in the patent to demonstrate that plaintiff ascribed a specific meaning to the term that differs from the ordinary meaning.  *Cf.* Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Likewise, defendants concede that

"providing" does not constitute a term of art, such that it would have a different meaning to interventional cardiologists.[5]  See Medtronic's Opening Claim Construction Brief at 11. The court finds defendants have not rebutted the "'heavy presumption' in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art." Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001).

Moreover, defendants' proposed construction is not only inconsistent with the ordinary meaning of "providing", it is also inconsistent with the claim context, and the law is clear that claim terms cannot construed in a vacuum. Phillips, 415 F.3d at 1314. As the court noted in the *Cordis* case, "the '213 patent focuses on use of the catheter in the human body; it teaches plaintiff's inventive technique for using the catheter to perform angioplasty." Cordis Corp., 506 F. Supp. 2d at 878-79. Defendants' construction, however, limits "providing" to creating, constructing, and selling – activities which are divorced from the method described in Claim 1. Defendants' construction seeks to limit the claim by injecting specific activities that are not related to physicians' using the method taught. These limitations are not consistent with the intrinsic evidence, nor have defendants shown that they are called for by any extrinsic evidence. In fact, as plaintiff noted during the *Markman* hearing, defendants' proposed construction does not find support in any dictionary

---

[5]The parties agree that interventional cardiologists are the persons of ordinary skill in the art to whom the '213 patent is directed.

of general use. *See* Exhibit 16 to Medtronic's Reply Brief in Support of Proposed Claim Construction (Doc. No. 144-16). As the Federal Circuit recognized, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, 415 F.3d at 1314. This is such a case.

At the *Markman* hearing, the parties also presented argument regarding the phrase "advancing the catheter body distal end through the aortic arch". While defendants did not ask the court to construe this phrase, its meaning is relevant to defendants' motion for partial summary judgment. The court's analysis of this issue will be set forth in its ruling on defendants' motion. Nonetheless, to assist the parties in their trial preparation, the court notes its determination that plaintiff did not change the scope of the '213 patent during the reexamination proceedings.[6] The patent as written and issued is directed to the femoral approach.

It is so ordered this 8th day of December, 2011.

*[signature: Tim Leonard]*
TIM LEONARD
United States District Judge

---

[6] On June 18, 2009, defendants filed a request for ex parte reexamination of the '213 patent in the United States Patent and Trademark Office ("PTO"); that request was granted on July 14, 2009. Thereafter, the parties agreed to stay this case pending action by the PTO. Order and Stipulation Concerning Discovery and Stay in View of Reexamination (Doc. No. 61). On September 28, 2010, plaintiff gave notice to the court of the PTO's intent to issue a reexamination certificate confirming the '213 patent. Notice of Intent to Issue Reexamination Certificate and Request to Lift the Instant Stay (Doc. No. 74).