IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN K. VODA, M.D. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-95-L |
| ) | |
| MEDTRONIC INC. and ) | |
| MEDTRONIC VASCULAR, INC., ) | |
| ) | |
| Defendants. ) | |

# O R D E R

Plaintiff, Dr. Jan K. Voda, is the holder of United States Patent No. 6,083,213 ("the '213 patent"), which was issued by the United States Patent and Trademark Office on July 4, 2000. Exhibit 1 to Complaint (Doc. No. 1-2). The '213 patent relates to plaintiff's inventive technique for using a guiding catheter to perform angioplasty of the left coronary artery. On January 22, 2009, plaintiff filed this action against defendants Medtronic Inc. and Medtronic Vascular, Inc. Plaintiff contends that defendants' manufacturing and sales of Medtronic EBU Guiding Catheters infringe Claims 1 and 2 of the '213 patent. *See* Complaint at ¶¶ 15, 17-21 (Doc. No. 1). Plaintiff alleges that defendants promote the use of their catheters "in a manner that contributes to or induces the infringement of the method covered by the '213 patent claims." Id. at ¶ 18. Claims 1 and 2 of the '213 patent teach:

> 1. A method for advancing a catheter through the aorta and into a coronary ostium, the aorta having an arch and an inner wall opposite the ostium, comprising the steps of:

> providing a catheter including an elongate catheter body having a proximal end and a distal end and having a central lumen from the proximal end to the distal end adapted to slidably receive a therapeutic catheter, the catheter body including a tip at the distal end of the catheter body adapted to removably lodge in the coronary artery ostium;
>
> advancing the catheter body distal end through the aortic arch; and
>
> engaging the aorta inner wall with a portion of the catheter body such that when the distal end of the catheter is positioned in the ostium, the catheter body engages the opposite wall of the aorta along a line having a length of about 1.5 cm or greater.
>
> 2. A method in accordance with claim **1**, wherein the ostium is the left coronary ostium.

Exhibit 1 to Complaint at 30-31 (Doc. No. 1-1).

This matter is before the court on plaintiff's motion for partial summary judgment. Plaintiff seeks judgment in his favor on defendants' assertion that Claims 1 and 2 of the '213 patent are invalid as anticipated or obvious. Plaintiff also seeks a ruling that the defenses of laches and mitigation of damages are unavailing. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party.

Board of Education v. Pico, 457 U.S. 853, 863 (1982).  Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2) (emphasis added).  *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court, however, may not make determinations of credibility nor weigh evidence. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001).

Defendants argue that Claims 1 and 2 of the '213 patent are invalid as anticipated.  Patents are entitled to a presumption of validity.  35 U.S.C. § 282.  To overcome that presumption, defendants must establish invalidity by clear and convincing evidence.  Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1378 (Fed. Cir. 2005).  Clear and convincing evidence is evidence that "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is

'highly probable.'" Price v. Symsek, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (*quoting* Buildex, Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988)). A patent is invalid as anticipated only if every limitation in a claim is found in a single prior art reference, and the court may not rely on extrinsic evidence to provide a missing limitation in a prior art reference. Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1149 (Fed. Cir. 2005), *cert. denied*, 547 U.S. 1055 (2006). Moreover, "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." Id. (*quoting* Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 956 (Fed. Cir. 2000)). The court may not read precise dimensions into drawings that are not to scale or do not expressly provide such dimensions. *See* Nystrom, 424 F.3d at 1149.

Based on these standards, the court finds defendants have failed to carry their burden of proving that Claims 1 and 2 are invalid as anticipated. None of the prior art references[1] cited by defendants specifically teaches engagement of the aortic

---

[1] Defendants's expert, Dr. Timothy A. Sanborn, opines that Claims 1 and 2 were anticipated based on seven specific prior art references: (1) Rizzo et al., *Use of the Arani Guiding Catheter with a Twist*, Catherization and Cardiovascular Diagnosis 20: 257-60 (1990) ("Rizzo"); (2) USCI, *PTCA in Perspective* Ch.3 (1986) ("USCI"); (3) Melvin P. Judkins, *Percutaneous Transfemoral Selective Coronary Arteriography*, 6 Radiologic Clinics of North America (No. 3) 467 (Dec. 1968) ("Judkins"); (4) U.S. Patent No. 5,980,486 to Enger ("Enger"); (5) S. King, J. Douglas, "Percutaneous Transluminal Coronary Angioplasty," Coronary Arteriography and Angioplasty at 440-50 (McGraw-Hill 1985) ("King"); (6) A. Tilkian, E. Daily, "Cardiac Catheterization and Coronary Arteriography," Cardiovascular Procedures: Diagnostic Techniques and Therapeutic Procedures at 140-41 (Mosby 1986) ("Tilkian"); and (7) M. Carr, "The Use of the Guiding Catheter in Coronary Angioplasty: The Technique of Manipulating Catheters to Obtain the Necessary Power to Cross Tight Coronary Stenoses," Catherization and Cardiovascular Design 12: 189-97 (1986) ("Carr"). Exhibit 2 to Dr. Voda's Motion for Partial Summary Judgment on Invalidity and Certain Affirmative

wall opposite the ostium along a line of 1.5 centimeters or greater.  Defendants' expert witness, Dr. Timothy A. Sanborn, confirms this in his expert report.[2]  This is fatal to defendants' anticipation defense.  All of the references except Durfee are silent as to the length of engagement, and none of the figures contained in the prior art indicate that they are drawn to scale or convey dimensions.  Defendants' argument that Dr. Sanborn could nonetheless infer length of engagement based on "known dimensions of the aorta and the catheters to the figures",[3] is the type of analysis that the Court in <u>Nystrom</u> rejected.  <u>Nystrom</u>, 424 F.3d at 1149 ("speculative modeling premised on unstated assumptions in prior art patent drawings cannot be the basis for challenging the validity of claims reciting specific dimensions not disclosed directly in such prior art").  The court finds that defendants have not met their burden of proving by clear and convincing evidence that Claims 1 and 2 of the '213 patent are invalid as anticipated by the prior art.  Plaintiff is therefore entitled to summary judgment on this issue.

---

Defenses and Memorandum in Support Thereof at ¶¶ 57, 65, 107, 115, 122, 136, and 145 (Doc. No. 137-1) [hereinafter cited as "Plaintiff's Motion"].  Although Dr. Sanborn also references U.S. Patent No. 5,203,776 to Durfee ("Durfee"), he does not specifically rely on Durfee to demonstrate anticipation.

[2]Exhibit 2 to Plaintiff's Motion at ¶ 59 (Rizzo); ¶ 61 (Durfee); ¶ 68 (USCI: Amplatz-type catheter); ¶ 70 (USCI: Arani-type catheter); ¶ 109 (Judkins); ¶ 116 (Enger); ¶ 130 (King); ¶ 139 (Tilkian); and ¶ 150 (Carr).

[3]Medtronic's Opposition to Dr. Voda's Motion for Partial Summary Judgment at 20 (Doc. No. 156) [hereinafter cited as "Medtronic's Opposition"].

The court, however, finds that genuine issues of material fact exist with respect to the prior public use defense and whether Claims 1 and 2 are invalid as obvious. While the ultimate determination that an invention is obvious, and therefore unpatentable, is a legal conclusion, that conclusion is necessarily based on underlying findings of fact. See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1164 (Fed. Cir. 2006). At this stage in the litigation, the court concludes too many factual issues exist for the court to determine whether either defense is valid. Summary judgment is thus inappropriate.

Because defendants will be permitted to present their obviousness defense at trial, the court must determine whether Durfee constitutes prior art. Plaintiff claims Durfee does not because it was filed on October 9, 1992 and the '213 patent is entitled to a priority date of January 23, 1991. Defendants counter that the '213 patent is not entitled to the January 23, 1991 priority date because it is a continuation-in-part ("CIP") application and the prior application did not disclose the 1.5 centimeter engagement. Defendants contend this limitation was not disclosed until October 30, 1992.

> "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application as required by 35 U.S.C. § 112." *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995); *see also Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("Different claims of [a CIP] application may therefore receive different effective dates. . . . Subject matter that

> arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application.").
>
> To satisfy the written description requirement the disclosure of the prior application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sough, [the inventor] was in possession *of the invention.*" . . . While a prior application need not contain precisely the same words as are found in the asserted claims . . . the prior application must indicate to a person skilled in the art that the inventor was "in possession" of the invention as later claimed.

PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299,1306 (Fed. Cir. 2008) (emphasis in original). Whether a prior application contains the requisite disclosures is a question of fact. Augustine Med., Inc., 181 F.3d at 1302.

The parties, however, did not sufficiently brief this issue for the court to determine whether plaintiff is entitled to the January 23, 1991 priority date. The court notes that it appears the parent application did, in fact, reference 1.5 centimeters and engagement. *See* Exhibit 15 to Medtronic's Opposition at 13-15 [pages 9-11 of the document] (Doc. No. 156-16). Whether this is sufficient, the court cannot say at this juncture. The parties should be prepared to address this issue in depth at the pretrial conference to be held on January 9, 2012.

The final issues presented by plaintiff's motion concern two affirmative defenses alleged by defendants: laches and failure to mitigate. Although defendants present failure to mitigate as a separate defense, the court finds it is simply the opposite side of the laches defense. Both defenses have their genesis

in plaintiff's delay in bringing this action.  The court will thus analyze the issue under the doctrine of laches.

The equitable defense of laches is committed to the sound discretion of the trial court.  See A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*).  To prevail on this defense, defendants have the burden of proving two factors:  first, that plaintiff's delay in filing suit was "unreasonable and inexcusable" and second, that the delay caused material prejudice to them.  Id. The period of delay is measured from when plaintiff knew or should have known of the infringement, but in no event begins earlier than the date the patent was issued. Id. In this case, the longest possible period of delay is approximately eight and a half years, from July 4, 2000, the date the '213 patent issued, until January 22, 2009, the date this action was filed.  Because the delay is more than six years, a presumption of laches arises.  Id. at 1035. The presumption can be overcome, however, by plaintiff's raising a genuine issue as to either the delay factor or the prejudice prong.  The court finds plaintiff has done so in this case as to the delay prong.  It is undisputed that plaintiff was involved in litigation regarding the same patent from 2003 until January 5, 2009; in fact, this action was filed fifteen days after the *Cordis* case concluded.  This is sufficient to burst the presumption bubble. Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1293 (Fed. Cir. 1992).

Defendants must therefore affirmatively prove unreasonable and inexcusable delay and material prejudice. Plaintiff argues defendants cannot establish the prejudice prong of the laches defense. The court concurs.

> Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary. Evidentiary, or "defense" prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events.
>
> Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. Such damages or monetary losses are not merely those attributable to a finding of liability for infringement.

A.C. Aukerman Co., 960 F.2d at 1032-33. Defendants, however, presented no evidence of either evidentiary or economic prejudice. In response to plaintiff's motion, defendants argue that "Medtronic *may* have increased the marketing of alternative products, or increased the funding to develop new products." Medtronic's Opposition at 33 (emphasis added). Arguments of counsel, however, are not evidence. As defendants have not sustained their burden of proof on the prejudice prong, the defense of laches is unavailing. Plaintiff is therefore entitled to summary judgment in his favor on the defenses of laches and failure to mitigate.

In sum, Dr. Voda's Motion for Partial Summary Judgment on Invalidity and Certain Affirmative Defenses (Doc. No. 130) is GRANTED in part and DENIED in part.

It is so ordered this 14th day of December, 2011.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge