IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAN K. VODA, M.D.                    )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )        Case No. CIV-09-95-L
                                     )
MEDTRONIC INC. and                   )
MEDTRONIC VASCULAR, INC.,            )
                                     )
            Defendants.              )

# O R D E R

Plaintiff, Dr. Jan K. Voda, is the holder of United States Patent No. 6,083,213

("the '213 patent"), which was issued by the United States Patent and Trademark

Office on July 4, 2000.   Exhibit 1 to Complaint (Doc. No. 1).   The '213 patent

contains method claims; that is, it relates to plaintiff's inventive technique for using

a guiding catheter to perform angioplasty of the left coronary artery using the femoral

approach.   On January 22, 2009, plaintiff filed this action against defendants

Medtronic Inc. and Medtronic Vascular, Inc.   Plaintiff alleged that defendants'

manufacturing and sales of Medtronic EBU Guiding Catheters infringed Claims 1

and 2 of the '213 patent. *See* Complaint at ¶¶ 15, 17-21 (Doc. No. 1).  Claims 1 and

2 of the '213 patent teach:

> 1. A method for advancing a catheter through the aorta
> and into a coronary ostium, the aorta having an arch and
> an inner wall opposite the ostium, comprising the steps of:
>
> providing a catheter including an elongate catheter body
> having a proximal end and a distal end and having a
> central lumen from the proximal end to the distal end

adapted to slidably receive a therapeutic catheter, the catheter body including a tip at the distal end of the catheter body adapted to removably lodge in the coronary artery ostium;

advancing the catheter body distal end through the aortic arch; and

engaging the aorta inner wall with a portion of the catheter body such that when the distal end of the catheter is positioned in the ostium, the catheter body engages the opposite wall of the aorta along a line having a length of about 1.5 cm or greater.

2. A method in accordance with claim **1**, wherein the ostium is the left coronary ostium.

Exhibit 1 to Complaint at 30-31 (Doc. No. 1-1).

Beginning January 17, 2012,[1] the case was tried to a jury, which returned a verdict in favor of plaintiff on January 26, 2012.  The jury specifically found that defendants induced and contributed to infringement of claims 1 or 2 of the '213 patent, that such infringement was willful, and that plaintiff was entitled to a reasonable royalty of $9,900,000.00.  Verdict Form at 1-4 (Doc. No. 272).  Prior to trial, the court granted plaintiff's motion for summary judgment in part.  The court held that defendants could not establish by clear and convincing evidence that plaintiff's patent was invalid as anticipated.  The court, however, found that factual issues precluded summary judgment with respect to defendants' invalidity defense based on obviousness and prior public use.  Voda v. Medtronic, Inc., Case No. CIV-

---

[1]Jury selection occurred on January 9, 2012.  Civil Trial Minute (Doc. No. 244).

09-95-L, order at 4-6 (W.D. Okla. Dec. 14, 2011) (Doc. No. 183).  Those issues were reserved for trial, and in fact, the court twice instructed the jury that it would need to determine the validity issue.[2]  Defendants, however, presented no evidence with respect to their invalidity defense at trial, and in fact, informed the court on the sixth day of trial that they were withdrawing the defense.  Trial Transcript at 1179, 1228. Based on the court's summary judgment ruling and defendants' failure to adduce evidence with respect to invalidity, the court granted plaintiff's motion for judgment as a matter of law with respect to invalidity.  The court entered judgment in accordance with its rulings and the jury's findings on January 27, 2012.  Judgment (Doc. No. 273).

This matter is before the court on post-trial motions submitted by the parties. Defendants timely renewed their motion for judgment as a matter of law, arguing that plaintiff failed to carry his burden of proof with respect to infringement, willfulness and damages.  In addition, defendants argue they are entitled to a new trial based on evidentiary rulings made by the court and because the court permitted the jury to meet briefly at the end of certain trial days to discuss the evidence they had heard.  Plaintiff opposes defendants' motions and, in turn, filed a motion to alter or amend the judgment to include prejudgment interest, attorney's fees, and enhanced damages.

Rule 50 of the Federal Rules of Civil Procedure provides in pertinent part that:

_____

[2]Trial Transcript at 1060-62.

If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  In ruling on defendants' renewed motion, the court must view the evidence in the light most favorable to plaintiff to determine whether there is evidence upon which the jury could have properly returned a verdict in his favor. Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996).[3]  The court does not weigh the evidence, determine the credibility of the witnesses, or substitute its conclusions for that of the jury.  Judgment as matter of law is only proper when "viewed in the light most favorable to the nonmoving party, the evidence and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party."  Mitchell v. Mobil Oil Corp., 896 F.2d 463, 467 (10th

---

[3]As renewed motions for judgment as a matter of law and motions for new trial are not unique to patent cases, the Federal Circuit applies the standards enunciated by the regional circuit in which the district court sits.  The issues raised by the current motions are thus governed by Tenth Circuit case law.  See Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 847 (Fed. Cir. 2006); Old Town Canoe Co. v. Confluence Holdings Corp., 448 F.3d 1309, 1314 (Fed. Cir. 2006).

Cir. 1990).  Indeed, the court may overrule the jury's decision "[o]nly if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the issue against that party'".  Sims v. Great American Life Ins. Co., 469 F.3d 870, 891 (10th Cir. 2006).

In contrast to the narrow standard governing renewed motions for judgment as a matter of law, the trial court's authority to grant a new trial "is large." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996).  Moreover, when ruling on a motion for a new trial, the court does not view the evidence in the light most favorable to either party; rather, the governing standard is whether "the 'claimed error substantially and adversely' affected the party's rights."  Henning v. Union Pacific R.R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008) (citation omitted).  Rule 59 of the Federal Rules of Civil Procedure provides that the court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court".  Fed. R. Civ. P. 59(a)(1)(A).  The trial court has great discretion in deciding whether to grant such a motion.

> "[I]f it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case."  "The trial judge in the federal system," we have reaffirmed, "has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence."

Gasperini, 518 U.S. at 433 (parentheses and citations omitted).  It is, in fact, an abuse of discretion to deny a motion for new trial "when 'the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence.'"  Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1110 (10th Cir. 2001) (citation omitted).

Defendants' Renewed Motion for Judgment as a Matter of Law

Defendants assert that "Plaintiff failed to meet his burden of proof of direct infringement, inducement of infringement, contributory infringement, willful infringement, and damages, and as a result there was no legally sufficient evidentiary basis for a reasonable jury to find for Dr. Voda on those issues.  In addition, the verdict was against the weight of the evidence."  Medtronic's Renewed Motion for Judgment as a Matter of Law or in the Alternative for New Trial with Respect to Infringement and Damages at 2 (Doc. No. 287) [hereinafter cited as "JMOL Motion"].

The patent claims in this case are method claims.  Therefore, the fact that defendants sell the allegedly infringing catheters is not sufficient in and of itself to prove infringement of the patent at issue.  Rather, plaintiff must demonstrate that someone other than defendants actually "practiced all steps of the claimed method." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1317 (Fed. Cir. 2009).[4]

---

[4]In support of this position, the Court cited Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770 (Fed. Cir. 1993), in which the Court held that "[a] method claim is *directly* infringed only by one practicing the patented method."  Id. at 775 (emphasis in original).

Plaintiff, however, does not have to prove multiple instances of direct infringement. "Just as anticipation can be found by a single prior art use, a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." Id.  In arguing that plaintiff did not meet this burden, defendants attack the weight and credibility of the testimony offered by plaintiff and his expert, Dr. Nicolas Chronos.  When ruling on a renewed motion for judgment as a matter of law, however, the court does not weigh the evidence or second-guess the jury's credibility determinations.  Moreover, defendants' citation of ACCO Brands, Inc. v. ABA Locks Mfr. Co, 501 F.3d 1307, 1313 (Fed. Cir. 2007), is inapposite.  This is not a case where the only person who may have used the accused device in an infringing manner is an expert witness hired for trial.  Both plaintiff and Dr. Chronos were practicing interventional cardiologists, and both testified – as fact witnesses – to their use of the EBU catheters and to the length of engagement they felt.  Trial Transcript at 480-82, 500, 502-505, 681-82, 705, 717.  Defendants continue to question the usefulness of Dr. Chronos' cadaver demonstration, but Dr. Chronos testified that the demonstration merely confirmed the length of engagement he felt when using the EBU in live patients.[5]  Defendants thoroughly cross-examined Dr. Chronos at trial and presented their own cadaver demonstration through their expert

---

[5]See Trial Transcript at 726 (the cadaver demonstration "really was just to back up my own clinical experience.").

witness, Dr. Barry F. Uretsky.[6]  Trial Transcript at 725-76, 778-81, 1130, 1137-43. The jury was presented with conflicting views and found in plaintiff's favor on the issue of direct infringement.  In their renewed motion, defendants have not demonstrated that the jury's verdict lacked a legally sufficient evidentiary basis. Judgment as a matter of law in defendants' favor on the issue of direct infringement is therefore not warranted.[7]

In addition to proving direct infringement, plaintiff needed to prove that defendants either induced or contributed to that infringement.  The statute, which refers to "actively induces",[8] has been interpreted to require proof of intent to induce infringement.  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1365 (Fed. Cir. 2004).  Proof of such intent can be demonstrated by circumstantial evidence, including an alleged infringer's own publications.  Id.  In this case there was sufficient evidence from which the jury could find such intent.  Defendants' publications emphasize that the EBU catheter was designed "for superior backup support" and that its curve "[b]races firmly against the contralateral aortic wall". Plaintiff's Trial Exhibit 6 at 1; Plaintiff's Trial Exhibit 7 at 1.  Plaintiff presented training

---

[6]In addition, Dr. Uretsky offered his opinion that Dr. Chronos' cadaver demonstration was not a valid method to determine length of engagement of the EBU catheter.  Trial Transcript at 1129-30, 1136-37, 1141.

[7]As the court has found sufficient evidence of direct infringement, it need not address defendants' argument that plaintiff did not establish that the EBU catheters necessarily infringe claims 1 and 2 of the '213 patent.

[8]35 U.S.C. § 271(b).

materials and voicemails that illustrated defendants encouraged their sales representatives to actively promote the EBU for its contralateral support, particularly in light of the "recent adverse decision in a patent litigation" against Cordis Corporation.[9]   Plaintiff's Trial Exhibit 25.   Defendants became aware of the '213 patent shortly after plaintiff filed suit against Cordis in 2003; their vice-president and chief patent counsel, Michael Jaro, was also aware of the result of that litigation. *See* Video Deposition of Michael Jaro.   Defendants acknowledge that the Cordis XB and XBC embody "the asserted methods of claims 1 and 2 of the '213 patent" and that if used by a physician those catheters "will achieve the 1.5 centimeters engagement set forth in claim 1 of the '213 patent."   Trial Transcript at 156-57. Defendants' publications and marketing materials, which specifically compare the EBU to the Cordis XB, note the similarities between the two lines of catheters[10] while

---

[9]The "patent litigation" referred to the suit plaintiff filed against Cordis Corporation in 2003. Voda v. Cordis Corp., Case No. CIV-03-1512-L (W.D. Okla. filed Oct. 30, 2003).   That lawsuit resulted in a jury verdict in plaintiff's favor.   *See* Voda v. Cordis Corp., 536 F.3d 1311, 1315 (Fed. Cir. 2008).

[10]In the voicemail, defendants' employee Teresita Obra states:

> Both the EBU and XB address similar anatomical challenges.  Both buttress the contra lateral Aortic wall to deliver back-up support. Both curves seat into the left coronary artery in a similar fashion. There are differences in how these curves work.  In general, the XB curves seat a little higher on the Aortic wall.  The XB curve has a little space between where it sits on the supporting aortic wall and where the tip enters the LCA.  The EBU takes a more direct route from the support of the aortic wall to the LCA.  The actual curve of the EBU is constructed on what we call a 'dynamic radius'. . . . I will be sending via email a video clip of the XB engaged in the glass arch versus the EBU.  You can use these clips to illustrate to your customers the contra lateral support mentioned earlier.

touting the EBU's "[g]reater surface area contact with contra lateral wall for better backup support".  Plaintiff's Trial Exhibit 20 at 4.  That defendants' sales force used these materials to convince doctors to use EBU catheters is demonstrated by Obra's statement that "[o]ne rep in particular had a customer who was a huge Cordis XB user; he did not even [want] to try our EBU.  After working with the customer and walking him through the differences (especially the sizing) the rep was able to convince him."  Plaintiff's Trial Exhibit 26.  "Because '[i]ntent is a factual determination particularly within the province of the trier of fact,'"[11] and the court finds there was sufficient evidence for the jury to conclude that defendants induced infringement of the '213 patent, defendants  are not entitled to judgment as a matter of law on this issue.

The court also finds defendants are not entitled to judgment as a matter of law on the question of contributory infringement.  Section 271(c) of Title 35 of the United States Code imposes liability on "[w]hoever offers to sell or sells within the United States  . . . [an] apparatus for use in practicing a patented process . . . knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use".  35 U.S.C. § 271(c).  As with inducement, contributory

---

Plaintiff's Trial Exhibit 25.

[11]Metabolite Labs., Inc., 370 F.3d at 1365 (quoting Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1557 (Fed. Cir. 1988)).

infringement requires proof that defendants "knew that the combination for which its components were especially made was both patented and infringing" and that the alleged infringing devices have "no substantial non-infringing uses." Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citation omitted).  While defendants challenge whether plaintiff proved defendants' intent, the main focus of their argument is whether the EBU catheters have a substantial non-infringing use.  Prior to trial, defendants sought summary judgment on this issue, contending that the EBU catheters can be used in the radial or brachial approach and therefore have a substantial non-infringing use.  The court denied defendants' motion, finding genuine issues of material fact existed with respect to this issue.  The question of substantial non-infringing use was hotly contested at trial, and the jury was instructed that:

> A component that has a number of non-infringing uses is often referred to as a staple or commodity article.  You may consider the number of cases in which the use is non-infringing; however, there is no minimum number of cases in which the non-infringing use must take place in order for that use to be substantial.  Moreover, the use cannot be farfetched, impractical, experimental, or hypothetical. Providing such a staple or commodity article is not contributory infringement even if the person receiving or buying the article uses it in an infringing way.

Jury Instruction No. 19 (Doc. No. 270).  Having heard the conflicting evidence and having been so instructed, the jury found defendants were liable for contributory infringement.  Defendants' lengthy post-trial argument that using EBU catheters to

perform angioplasty using the radial approach constitutes a substantial non-infringing use is misplaced,[12] as it asks the court to reweigh an issue decided by the jury. The court, however, does not have discretion to do so at this time. Given that there is sufficient evidence to support the jury's contributory infringement finding, the court may not disregard the finding implicit therein that the EBU catheters do not have a substantial non-infringing use. *See* Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996). Defendants' motion for judgment as a matter of law on the issue of infringement is therefore denied.

The court, however, finds that defendants' motion must be granted with respect to the willfulness finding. In In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*), the Federal Circuit enunciated a two-prong test for establishing willful infringement:

> a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the alleged infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding)

---

[12]Likewise misplaced is defendants' argument that "the radial approach is growing in popularity." Medtronic's Reply Brief in Support of Renewed Motion for Judgment as a Matter of Law or in the Alternative for New Trial with Respect to Infringement and Damages at 11 (Doc. No. 309) [hereinafter cited as "Medtronic's Reply Brief"]. Testimony at trial established that in 2002, the radial approach was used in only 1 to 2 percent of all angioplasties performed in the United States. By the time of trial in 2012, the radial approach accounted for 5 to 10 percent of such angioplasties. Trial Transcript at 1128. The issue, however, is whether that use was substantial during the period in question for this lawsuit, January 22, 2003 to January 23, 2011. The jury found it was not, and there is substantial evidence to support that finding.

> was either known or so obvious that it should have been
> known to the accused infringer.

Id. at 1371 (citation omitted).  At the conclusion of trial, the court submitted the question of willfulness to the jury.  Subsequent to trial, the Federal Circuit issued its opinion in Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003 (Fed. Cir. 2012).  In Bard, the Court held that "the threshold objective prong of the willfulness standard enunciated in *Seagate* is a question of law based on underlying mixed questions of law and fact".  Id. at 1005.  The court thus must reexamine the evidence to determine whether plaintiff established the objective prong of the willfulness test.[13]  "[T]he '"objective" prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.'"  Id. (*quoting* Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010)).  In this case, defendants asserted a number of defenses to the infringement charge, including invalidity of the patent,[14]

---

[13]As the Court in Bard noted, "the question may sometimes be sent to the jury, but it remains a question of law."  Bard Peripheral Vascular, Inc., 682 F.3d at 1008 n.2.

[14]Defendants asserted invalidity both at this level through the summary judgment stage and before the United States Patent Office in the form of a number of reexamination requests.  Although those reexamination requests were ultimately unsuccessful, the court cannot say that they were baseless.  Likewise, although defendants' anticipation defense was unsuccessful at the summary judgment stage, the court found the obviousness and prior public use defenses raised triable issues.  The fact that defendants withdrew their validity defense at trial does not mean that it was not a reasonable defense to mount.  The court, however, takes issue with defendants' post hoc justification for withdrawing their remaining validity defense at trial.  Defendants assert that they "did not present an invalidity defense at trial because the bulk of its invalidity evidence was excluded."  Medtronic's Reply Brief at 13.  This assertion is belied by the record.  Defendants never asserted at trial that they could not go forward with the validity defense because of the court's *in limine* rulings.  Rather, defendants stated they "decided to pick a horse and ride it" and so would only present a defense to infringement and damages.  Trial Transcript at 1179, 1279.  In addition,

possession of a patent on the EBU catheter,[15] and that they did not induce or contribute to any direct infringement.[16]  For a defense to be unreasonable, it must be one "that no reasonable litigant could realistically expect to secure favorable relief."  Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 61 (1993).  Based on the parties' submissions before and during trial, the court cannot say that plaintiff established by clear and convincing evidence that the defenses in this case were objectively unreasonable.  The court found that triable issues existed with respect to both invalidity and infringement; the fact that defendants were ultimately unsuccessful does not render these defenses a sham or unreasonable.  Plaintiff therefore cannot meet the first prong of the *Seagate* test.[17]  Defendants are thus entitled to judgment as a matter of law on the issue of willfulness.

The final issue presented by defendants' motion for judgment as a matter of law concerns damages.  Defendants argue the royalty damages awarded by the jury – which amounts to a royalty rate of 14.3 percent –  were unsupported by the

---

defendants indicated that they made the decision to withdraw the validity defense "[l]iterally the night before we advised the Court of that decision" because they "wanted to see how the case unfolded."  Trial Transcript at 1278.

[15]Plaintiff's U.S. Patent No. 5,445,625, the parent to the '213 patent, was cited on the face of the patent obtained for the EBU catheter.  Defendants' Trial Exhibit 246 at 1.

[16]Defendants also questioned whether plaintiff proved any instances of direct infringement.

[17]As plaintiff has not established the first prong, the court need not examine the jury's factual finding with respect to second prong.  *See* Bard Peripheral Vascular, Inc., 682 F.3d at 1008 ("If, in view of the facts, the asserted defenses were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence.").

evidence.  Defendants claim that "Dr. Voda's expert only testified to a maximum reasonable royalty range of 9.25% to 12.75% in his expert report" and that "[n]o evidence or testimony supports using a rate above 12.75%."  Medtronic's Reply Brief at 13-14.  Defendants, however, have misrepresented the record.  Plaintiff's damages expert, Dr. Lawrence Wu, clearly testified at trial to a maximum royalty rate of 18.5 percent.  Trial Transcript at 868-69, 890, 922.  Dr. Wu's report also reflects a maximum royalty rate of 18.5 percent.  Exhibit 2 to Dr. Voda's Sur-Reply in Opposition to Medtronic's Motion for Renewed Judgment at a Matter of Law (Dkt. Nos. 289 and 309) at ¶¶ 26, 27, 32, 64 (Doc. No. 315).  Defendants' argument that there is "no evidence" to support a royalty rate above 12.75 percent is simply false.  Likewise, their argument that Dr. Wu "failed to provide any royalty base in his expert report or in his testimony",[18] is incorrect.  Dr. Wu used the same base as that used by defendants' expert, Steven Becker.[19]  *See* Trial Transcript at 866; Deposition of Lawrence Wu at 14-15.  Defendants' remaining arguments against the damages verdict amount to nothing more than an attack on Dr. Wu's methodology and conclusions – all of which they explored during cross-examination.  The jury obviously found plaintiff's evidence more credible than that presented by defendants.

---

[18]JMOL Motion at 30.

[19]Moreover, defendants waived the argument that Dr. Wu "failed to provide any royalty base in his expert report".  JMOL Motion at 30.  Defendants presented a motion *in limine* on this very subject.  Medtronic's Motion *In Limine* at 13 [Motion *In Limine* No. 14] (Doc. No. 198) [hereinafter cited as "Defendants' Motion *In Limine*"].  At the pretrial conference, however, they agreed that this motion was moot.  *See* Voda v. Medtronic, Inc., Case No. CIV-09-95-L, order at 1 (W.D. Okla. Jan. 12, 2012) (Doc. No. 245).

The jury was free to reject defendants' expert testimony and "was entitled to choose a damages award within the amounts advocated by" plaintiff's expert. Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1241 (Fed. Cir. 2011) (citation omitted). The jury's award was within the parameters presented by Dr. Wu and is "is not 'so outrageously high . . . as to be unsupportable as an estimation of a reasonable royalty.'" Id. (quoting Rite-Hit Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995)). That defendants presented contrary evidence does not entitle them to judgment as a matter of law as that evidence was not so overwhelming that it points but one way.

In sum, defendants' renewed motion for judgment as a matter of law is denied except with respect to the issue of willfulness.

## Defendants' Motion for New Trial

Defendants also seek a new trial, arguing that the court erred in allowing and excluding certain evidence.[20] To the extent defendants contend the court improperly excluded evidence that relates to their invalidity defense, the court finds defendants waived such arguments by withdrawing that defense at trial. See Jamesbury Corp.

---

[20]In addition to the six evidentiary grounds briefed in defendants' motion, defendants assert additional grounds for a new trial in footnotes 7, 23, and 50. Medtronic's Motion for New Trial Based on Evidentiary Rulings and Jury Instructions at 3, 9, 22 (Doc. No. 288) [hereinafter cited as "New Trial Motion"]. Other than mentioning the issues, however, defendants do nothing more to further explicate those grounds for relief. Arguments that are not developed are deemed waived. See Craven v. Univ. of Colorado Hosp. Auth., 260 F.3d 1218, 1226 (10th Cir. 2001) ("a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented") (citation omitted); Gross v. Burggraf Const. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).

v. Litton Indus. Prods., Inc., 756 F.2d 1556, 1564 (Fed. Cir. 1985) (withdrawal of instruction for obviousness waives the defense), *rev'd on other grounds* A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1038-39 (Fed. Cir. 1992); *see also* Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1176 (Fed. Cir. 2005) (voluntarily dropping anticipation theory constitutes waiver of anticipation claim).  The court thus denies defendants' motion for a new trial based on the exclusion of Dr. Timothy A. Sanborn's cine images, the exclusion of defendants' prior art based on the stay order, and exclusion of the *Durfee* patent.[21]  In addition, the court would deny the motion based on these grounds on the merits.  Defendants basically present the same arguments to the court that they made prior to trial.[22] Nothing in defendants' current submission convinces the court that it was in error or that defendants were prejudiced by those rulings.  The court therefore readopts its pretrial rulings and incorporates them by reference here.  *See* Voda v. Medtronic, Inc., Case No. CIV-09-95-L, ord. at 7-12 (W.D. Okla. Jan. 12, 2012) (Doc. No. 245).

---

[21]U.S. Patent No. 5,203,776 to Durfee.

[22]There is one exception.  In their argument regarding exclusion of prior art based on the parties' stipulation, defendants cite certain letters that were not previously submitted to the court. New Trial Motion at 19-20.  This parol evidence, however, does not support defendants' position; rather, the letters demonstrate that defendants were concerned with being foreclosed from arguing any prior art submitted by *plaintiff* to the Patent Office during the reexamination.  The letters do not address the language the court found dispositive in its ruling.  Voda v. Medtronic, Inc., Case No. CIV-09-95-L, ord. at 12 (W.D. Okla. Jan. 12, 2012) (Doc. No. 245) ("Defendants' assertion that the second sentence prevents solely a combination of these four references, however, makes the stipulation's reference to 'or original prosecution of the patent in suit' surplusage.").

The remaining three evidentiary errors asserted by defendants relate to infringement.  Defendants' reassertion of its *Daubert* argument with respect to the cadaver demonstration by Dr. Chronos is rejected.  As noted in the court's *Daubert* order, defendants' arguments go to the weight of Dr. Chronos's demonstration, not its admissibility.  Voda v. Medtronic, Inc., Case No. CIV-09-95-L, ord. at 3 (W.D. Okla. Dec. 30, 2011) (Doc. No. 212).  As noted earlier, defendants thoroughly cross-examined Dr. Chronos about the alleged inadequacies of his opinions and the cadaver demonstration and presented their own witness who questioned the efficacy of the demonstration.  The court finds defendants have not established that a new trial is warranted based on the court's admission of Dr. Chronos's demonstration.

Likewise, the court finds a new trial is not warranted based on the court's admission of certain evidence related to the *Cordis* trial.  Contrary to defendants' assertions, the *Cordis* verdict was relevant to the issue of damages and was discussed by the experts.  In addition, the existence of that case and defendants' knowledge of it and the verdict were relevant to the willfulness issue.  At the conclusion of the case, the court instructed the jury that simply because plaintiff prevailed in prior cases

> does not mean that he is entitled to a finding that the defendants in this case have induced or contributed to infringement of the '213 patent.  Those cases involved parties unrelated to the defendants in this case, and concerned issues and evidence that differs from the case at issue.  Your decision on the questions presented in this case must be yours alone, based upon all of the evidence

18

in this case, and reached without any undue influence
from the results of other cases.

Jury Instruction No. 10 (Doc. No. 270).  Jurors are presumed to have followed the

instructions given.  United States v. Turrietta, __ F.3d __, 2012 WL 3711871 at *4-5

(10th Cir. Aug. 29, 2012).  Moreover, contrary to defendants' assertion that

"Medtronic repeatedly raised the issue with the Court and sought curative

instructions that were denied",[23] defendants were directed by the court to propose

a limiting instruction at the appropriate time during testimony.  Trial Transcript at 264.

They did not do so.  Moreover, defendants have failed to establish that admission

of this evidence substantially and adversely their rights.  Prejudice cannot be

presumed.

Finally, the court does not find a new trial is warranted based on the admission

of product-to-product comparisons.  Defendants argue that it was error to allow

evidence comparing the EBU catheters to Cordis, Boston Scientific/SCIMED, and

Abbott/Guidant catheters.  Prior to trial, defendant sought a ruling *in limine*

precluding plaintiff from comparing defendants' "product to the Voda Left or CLS, *or*

---

[23]New Trial Motion at 14.  Defendants cite two instances where they requested a limiting instruction.  One instance was during testimony by a witness who was not discussing the *Cordis* case.  While the court recognized that a limiting instruction on the *Cordis* case would be appropriate, it told the parties that the time to do that would be when plaintiff presented such testimony.  Trial Transcript at 264.  The other instance was during the court's final jury instruction conference just prior to charging the jury.  While the court did not give defendants' proposed instruction, it did give the instruction quoted in the text.

*any other commercial embodiment of Dr. Voda's invention*".[24]  Defendants' Motion

*In Limine* at 14 (emphasis added).  Defendants withdrew this motion at the pretrial

conference; it therefore was not subject to the parties' stipulation that they would

have a continuing objection to any matter raised in their motions *in limine*.  Indeed,

the court instructed defendants that they would need to object to such evidence, and

defendants indicated they would.  Trial Transcript at 500.[25]  Defendants, however,

did not do so.  The court finds defendants have not established that admission of this

---

[24]At trial, defendants admitted that the Cordis, Boston Scientific/SCIMED, and Abbott/Guidant catheters were commercial embodiments of plaintiff's invention.  Trial Transcript at 156-57.  The motion *in limine* thus went beyond merely comparing the Voda catheter to the EBU catheter.

[25]The following colloquy occurred at a sidebar conference:

> MR. SIMONS: We reurged all motions in limine again.
>
> THE COURT: Except the ones you withdrew.
>
> * * *
>
> MR. SIMONS: We are talking about the motion related to Voda product to product.
>
> MR. STOCKWELL: Voda comparison, the Voda to EBU was withdrawn.
>
> MR. SIMONS: I am reurging it.
>
> MR. STOCKWELL: Our position is it is waived.
>
> MR. SIMONS: You are saying I cannot have a running objection on that?
>
> THE COURT: You withdrew it.
>
> MR. SIMONS: I understand, but that was in the motion in limine stage.
>
> THE COURT: I think you will need to object to it, then.
>
> MR. SIMONS: Okay.  I will do so.

Trial Transcript at 499-500.

20

evidence constitutes plain error.   Moreover, the jury was instructed that it must determine infringement by focusing on the claims of the '213 patent and determining whether "each and every step of the claim is present in the use of defendants' catheters by doctors".   Jury Instruction No. 20.   At no point was the jury instructed that it could find infringement simply because other comparable catheters were shown to infringe.   Indeed, as noted above, the jury was expressly instructed otherwise.   The court thus finds defendants are not entitled to a new trial based on the court's evidentiary rulings.

Defendants also contend they are entitled to a new trial because the court permitted the jury to meet at the conclusion of four of the seven days of testimony to discuss the evidence they had heard.[26]   Defendants couch this issue as an objection to the court's preliminary jury instructions, which it is not.   Although the court indicated in its preliminary instructions that it would allow the jury to meet, defendants do not object to the language of the instruction, but rather to the very act of the jury's meeting, which they term premature deliberations.   In its preliminary instructions, the court informed the jury:

> First, you are not to discuss the case, or anything about it, with anyone other than your fellow jurors in the jury room. Until you retire to the jury room at the end of the case to

---

[26]The trial lasted eight days, but the last trial day consisted of argument and instructions. The court did not permit the jury to meet on the first day of testimony, nor the last day of testimony. In addition, the court permitted the jury to meet on the third day of trial only for ten minutes and only to ascertain whether there were additional terms that needed to be added to the Glossary of Terms. *See* Civil Trial Minutes (Doc. Nos. 256-57, 260-64).

deliberate on your verdict, you simply are not to talk about this case.  There is one exception to this rule -- during the trial you may discuss with your fellow jurors the testimony of the witnesses so long as that discussion takes place <u>in</u> the jury deliberation room when all the jurors are present. This discussion time will usually occur at the end of the trial day and will last no longer than 20 to 30 minutes. **During this discussion time, do not attempt to arrive at a conclusion as to overall merits of this case – this time is solely for you to discuss among yourselves any questions you might have about a witness's testimony.**  When you go home tonight, you will be asked what happened.  Simply tell whoever asks that you cannot discuss the case.

Second, do not read or listen to anything touching on this case in any way.  If anyone should try to talk to you about it, bring it to my attention promptly.

Third, do not try to do any research or make any investigation about the case on your own.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the Internet, any Internet service, or any text or instant messaging service; or any Internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

**Finally, do not form any opinion about the merits of the case until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.**

Preliminary Jury Instructions at 8-9 (emphasis added).  In addition, each night that

the court allowed the jury to meet, it reiterated that it was not to deliberate or to

reach any conclusions on the merits.  For example, on the first day the jury was

allowed to meet (which was the second day of trial), the court directed the jury as

follows:

> As I told you before, as you go home tonight, you are not
> to discuss the case with anyone, or do any research, or
> reach any conclusions until you have heard all of the
> evidence.
>
> I did mention that at the end of each day – we didn't
> yesterday, but at the end of each day you will have the
> opportunity to go to the jury room and visit about the
> evidence that you have heard to date.  But with that, there
> is a very important cautionary construction [sic]; that is,
> you are only to discuss the evidence, and if you have
> collective questions or something that perhaps you can
> answer among yourselves relating to various things, but
> don't in any way begin to make any comment or deliberate
> or reach any conclusions.  You have got a lot of evidence
> to hear, lots of witnesses, more evidence.  **So don't in
> any way deliberate, or begin to reach conclusions, or
> even discuss who should prevail, or not prevail.  All of
> that is not to be done.**  It is simply time for you to discuss
> the evidence that you have heard to date among
> yourselves.

Trial Transcript at 403 (emphasis added).    A similar cautionary instruction was

repeated each day the jury met.  Trial Transcript at 601-02, 835, 1015, 1228.  While

there is a presumption that "jurors will remain true to their oath and conscientiously

follow the trial court's instructions",[27] in this case we have proof that the jurors did

so.[28]  Furthermore, defendants did not ask to query the jury either after the court

---

[27]<u>Turrietta</u>, 2012 WL at *4.

[28]On the third day of trial, the court was not going to permit the jury to meet.  Nonetheless, one of the jurors indicated he was curious about some terminology that had been used in the case and would like to "ask a question, but we can't agree on that unless we meet because we're not supposed to discuss things."  Trial Transcript at 600-01.

received a note from the jury that defendants contend demonstrates the jury was deliberating[29] or at the conclusion of trial.[30]  There is thus no evidence that the jury betrayed its oath and engaged in deliberations prior to the conclusion of the trial. Moreover, defendants cannot establish they were harmed by the court's practice even though they argue they were necessarily prejudiced because the jury rendered its verdict after "less than three hours".[31]  The court notes that a jury in the Eastern District of Missouri – which did not meet during trial – returned a $1,000,000,000.00 verdict in 45 minutes after a seventeen day trial.  Monsanto Co. v. E.I. DuPont De Nemours & Co., Case No. 09CV00686 ERW, Minutes of Civil Trial (Doc. No. 1562). Defendants' claim of prejudice based on the length of time the jury deliberated in this case thus rings hollow.  Defendants' motion for new trial is denied.

<u>Plaintiff's Motion to Alter or Amend</u>

Plaintiff seeks amendment of the judgment to add prejudgment interest, enhanced damages, and attorney's fees.  As a general rule, prejudgment interest

---

[29]See Trial Transcript at 1052.

[30]After the jury returned its verdict and the court polled the jurors, the court specifically asked counsel if they knew "of any reason why this jury cannot be discharged at this time?"  Trial Transcript at 1437.  Even though this would have been the appropriate time to question the jurors if defendants truly believed any preliminary deliberations had occurred, counsel for defendants answered the court's question in the negative. Id. at 1438.  The jury was thus discharged. Id. at 1439.

[31]The court's minute reflects that the jury retired to deliberate at 11:15 a.m. and returned its verdict in the courtroom at 4:15 p.m., which even allowing for a lunch break is more than three hours.  Civil Trial Minute (Doc. No. 269).

should ordinarily be awarded in patent infringement actions.  General Motors Corp.

v. Devex Corp., 461 U.S. 648, 655 (1983).

> In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.  An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment.

Id. at 655-56 (footnote omitted).  Although defendants recognize this general rule,

they argue prejudgment interest should be denied based on plaintiff's undue delay

in filing this action.  The court, however, has already found the delay in this case was

not undue.  Voda v. Medtronic, Inc., Case No. CIV-09-95-L, ord. at 8-9 (W.D. Okla.

Dec. 14, 2011) (Doc. No. 183).  In response to plaintiff's motion for prejudgment

interest, defendants present no evidence of evidentiary or economic prejudice.

Plaintiff's request for prejudgment interest is therefore granted.

The rate of interest and whether to compound it are matters for the court's

discretion.  Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed.

Cir. 1986).  Plaintiff contends the appropriate rate is the prime rate, compounded

annually.  In contrast, defendant proposes using the six-month or one-year United

States Treasury Bill rate.  See Defendants' Response to Dr. Voda's Consolidated

Motion for Prejudgment Interest at Exhibit 3 (Doc. No. 293).  Defendants argue this

rate is proper because "[t]here is no evidence that Dr. Voda would have been able to achieve as good or better return than the almost guaranteed returns provided by T-Bills." Id. at 6.   Defendants' argument is based on a misapprehension of the economic policy for prejudgment interest; the purpose of prejudgment interest is to make plaintiff whole by compensating him for the loss of use of the money owed him.   Bio-Rad Labs., Inc., 807 F.2d at 969.   The court finds that defendants' proposed rate is too low and that plaintiff's proposed rate is reasonable.   The court thus concludes the appropriate rate is the prime rate, compounded annually.   This results in a total prejudgment interest award of $2,051,771.00.[32]

The next issue for decision is whether to award enhanced damages.   Plaintiff seeks double damages from January 22, 2003 to May 25, 2006 (the date of the Cordis verdict) and treble damages thereafter.   The Patent Act permits the court to award enhanced damages of "up to three times the amount found or assessed."   35 U.S.C. § 284.   Whether to award such damages is two-step process.   "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based.   If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances."   Jurgens, 80 F.3d at 1570.   Having found that plaintiff did not establish the objective prong of the willfulness inquiry, the court concludes

---

[32]This is the amount proposed by plaintiff.   Defendants did not challenge plaintiff's calculations, only his use of the prime rate to calculate that interest.

that enhanced damages are not appropriate in this case.[33]   Because the first

requirement for enhanced damages has not been met, the court need not consider

the factors enunciated by the Federal Circuit in Read Corp. v. Portec, Inc., 970 F.2d

816 (Fed. Cir. 1992).

The final issue for decision is plaintiff's request for attorney's fees.  Section

285 provides the court "in exceptional cases may award reasonable attorney fees

to the prevailing party." 35 U.S.C. § 285.  As with enhanced damages, the decision

to award attorney's fees involves two steps.  Cybor Corp. v. FAS Techs., Inc., 138

F.3d 1448, 1460 (Fed. Cir. 1998).  First, the court must determine whether the action

constitutes an exceptional case.  "As a general rule, attorneys fees under section

285 may be justified by any valid basis for awarding increased damages under

section 284."   Jurgens, 80 F.3d at 1573 n.4.  In addition, the Federal Circuit has

"identified as 'exceptional' those cases involving 'inequitable conduct before the

[Patent Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith

litigation; a frivolous suit or willful infringement.'"  Forest Labs., Inc. v. Abbott Labs.,

339 F.3d 1324, 1329 (Fed. Cir. 2003) (citations omitted).

Based on these standards, the court finds plaintiff has failed to demonstrate

by clear and convincing evidence that this case is exceptional within the meaning of

the statute.  Given the court's conclusion that plaintiff did not satisfy the objective

---

[33]Enhanced damages may also be awarded based on bad faith infringement.  Jurgens, 80 F.3d at 1570-71.  Plaintiff does not claim that defendants acted with the requisite bad faith to warrant enhanced damages.

prong of the willfulness analysis, he cannot rely on the jury's willfulness finding to demonstrate the exceptional nature of this case.  Likewise, defendants' litigation tactics were not so vexatious as to constitute bad faith litigation.  The court therefore concludes plaintiff has not established that an award of attorney's fees is warranted.

Conclusion

In sum, Dr. Voda's Motion for Prejudgment Interest (Doc. No. 276) is GRANTED; Dr. Voda's Motion for Enhancement of Damages and Award of Attorneys' Fees (Doc. No. 277) is DENIED; Dr. Voda's Motion to Amend the Judgment (Doc. No. 285) is GRANTED in part and DENIED in part; Medtronic's Renewed Motion for Judgment as a Matter of Law with Respect to Infringement and Damages (Doc. No. 287) is GRANTED in part and DENIED in part; Medtronic's Alternative Motion for New Trial with Respect to Infringement and Damages (Doc. No. 287) is DENIED; Medtronic's Motion for New Trial Based on Evidentiary Rulings and Jury Instructions (Doc. No. 288) is DENIED; and Medtronic's Application for Leave to Contact Jurors (Doc. No. 299) is DENIED.  An amended judgment will issue accordingly.

It is so ordered this 27th day of September, 2012.

_Tim Leonard_
TIM LEONARD
United States District Judge

28